Good morning, Your Honors. May it please the Court, Elizabeth Richardson-Royer, on behalf of the petitioner, Maurice Lewis. I am going to try to reserve two minutes for rebuttal today. Okay. Watch the clock, please. Yes. This case, at its core, is about the unreasonable failure of Maurice Lewis's trial counsel to present any evidence in mitigation at sentencing, which increased Maurice Lewis's prison term. But before turning to the merits of the ineffective assistance of counsel claim, I'd like to spend a few minutes talking about the timeliness issue to explain why the District Court did not clearly err in determining that the claim was timely. Maurice Lewis was not represented by counsel in habeas proceedings until 2011, when my office was appointed. And during the investigation of the case, and particularly the sentencing, counsel went to get the case file from the 1994 prior that resulted in the exorbitant prison term. And there were numerous red flags in this case file, once it was obtained, that should have led anyone who was litigating a motion to strike that prior to investigate whether Maurice Lewis had an intellectual disability. And so, only once my office had the case that this was discovered, and as the District Court correctly found, it would have been impossible for Maurice Lewis, through the exercise of normal, reasonable diligence, to discover the basis for that claim. And so, statutory tolling was appropriate. Let me ask you about one question I had, which is, there seems to be two or maybe three different claims that you're raising here. And we've said in Marticich that for ECA tolling purposes, statute of limitations purposes, we look on a claim-by-claim basis. So, one of the claims, which seems clearly separate, is the letters of recommendation, the reference letters, which the sentencing counsel didn't bring to the attention of the judge. And, you know, those were obviously known at the time of trial. So, what's your argument that we should hear that claim now? Respectfully, I believe it's one claim of ineffective assistance of counsel at sentencing. We clearly don't do that. I mean, ineffective assistance of counsel has to be a specific claim of how the attorney was ineffective. We've made that clear in countless opinions. I think if the court considers the subclaim to be a separate claim, there are two possible bases for tolling. The first is statutory tolling is still appropriate. This is an intellectually disabled person who there's no evidence in the record that he personally ever knew about these character references, that he would remember that they existed, that he should have known the factual basis for the ineffective assistance. Is that the test? Because those items were known at the time of trial, and any habeas counsel would have known, or he would be held responsible. I'm not sure I've seen a case where we assume the conclusion that the individual is incompetent or incapable and then say the statute of limitations hasn't run. I think the district court's finding of intellectual disability and the finding that Maurice Lewis as an incarcerated, intellectually disabled person would have struggled to discover the 1993 report should apply equally. But if it doesn't, there's an alternative basis for which was raised below and not reached by the district court because the district court found statutory tolling. But Maurice Lewis should be entitled to equitable tolling as well on the basis of his intellectual disability. And to the extent that the court disagrees that statutory tolling is available, the appropriate thing would be to remand to allow the district court to reach the equitable tolling question, which it didn't have to reach below. Well, let's focus on, go ahead and focus on the 1993 report, which I think was the focus of your argument. I think there were two focuses of the argument in terms of the merits. I think taken together, the evidence of intellectual disability and the character references both should have been presented by trial counsel in support of the Romero motion to strike the prior. And that's all that this counsel did. He was hired at sentencing. His only task was to represent Maurice Lewis at sentencing. The only thing he decided to do at sentencing was seek to strike this prior. And yet, despite that, he failed to look at the prior case file. He failed to present the character evidence. He failed to do anything in terms of what the California Supreme Court has held that counsel should do in litigating a Romero motion, which is investigate the background, character, and prospects of the defendant. So, based on the brief, there was a page that said, in the 1994 file, that said two PhD people had visited Lewis. And then the counsel, I don't know if that was you or whatever the two were named, finding them, asking them for a copy of the reports that was not in the file. Is there any basis for saying that the attorney, the sentencing counsel who didn't do that, didn't go and visit the psychologist and ask them for a copy, was deficient under the Strickland standard? Or could the state court reasonably determine that that was not deficient? It was unreasonable. And I want to make clear that it wasn't just the court order allowing visitation by these two PhDs. There were other indications in that case file that there was a problem here. The trial counsel in the 1993 case said on the record multiple times, this person is slow-witted. Or this, I could, let's see what exactly he said. But multiple times he said, this is a person who's vulnerable in prison. He's a gentle, slow-witted person. That combined with the fact that he was examined should have led anybody who's litigating a motion to strike this prior to think, what was going on here that led counsel to hire these experts, that led counsel to make these representations on the record? So the lawyer, if I'm understanding correctly, you're saying the lawyer should have known in a trial that the person, that Mr. Lewis was slow. I mean, that's another concern I had about the running of the statute of limitations. His lawyer in the 1993 case, the prior, should have certainly known that he was slow and did know. But that doesn't impute knowledge for purposes of an ineffective assistance of counsel claim based on the ineffectiveness of the sentencing counsel in the 2004 case. So the sentencing counsel of the 2004 case should have known that his client was slow. He should have because his only goal was to strike this prior. And in reading the case file, which he should have and clearly did not do, he should have become aware of this intellectual discipline. Again, I'm troubled by the statute. Ms. Royer? Yes, I'm sorry. Excuse me, let Judge Ikuda finish her question and then I have one. Okay. Ms. Royer, do I understand correctly the prior was a rape of a child? It was the violation of the penal code was rape in concert of a minor under the age of 14. And so that's the crime. I think one of the things I wanted to point out to the court, which I'm not sure was totally clear, is that to the extent that respondent says there was a strategic reason for not presenting mitigation evidence to avoid the facts of this heinous crime coming out. The facts of the crime are actually much less troubling than the crime itself would have, you believe. He was 19, an intellectually disabled person, went on sort of a double date with his cousin and the cousin's 15-year-old girlfriend believed the 12-year-old to be 15. So certainly a crime occurred, but this wasn't an adult predator preying on a child. There wasn't any heinous fact other than the crime itself that should have led counsel to want to avoid the facts of that case. What I'm concerned about is whether, again, we don't have a reasoned decision of the state court trying to put ourselves in their place. Could they have found that this character evidence that he was a nice man or slow or had a drinking problem, that that's pretty weak tea compared to the facts of the current crime, plus his prior, plus his prison record, plus his being on probation at the time. Should have come in, but it's pretty anemic mitigation when you look at it all in context. Respectfully, I disagree to the extent that it was anemic. I think family support is something that's really important in mitigation, and I think there was a prior and then there were some traffic violations and then one other offense in between. But the default for a trial court under California law is the middle term. That's the default. That's what the court has to start with. And so if the court had started with the middle term and had had any mitigation, there's at least a reasonable likelihood that it would have stayed with the middle term. The court remarked on the lack of mitigation. The prosecution in the trial briefs repeatedly argued that there was no mitigation, and that sort of left the trial court with its hands tied. It had to impose the upper term. And had there been evidence that this was a person who had family support, had the support of the community, had been a hardworking person trying to provide for his family, I don't think there's any reasonable determination by the state court that that wouldn't have been likely to change just to the default middle term.  You're out of time. Thank you. We'll give you a minute for rebuttal. We'll hear from the government. May it please the Court. Deputy Attorney General Sumada Costello appearing on behalf of Respondent. I'd also like to just briefly address the timeliness question before addressing the merits of the claim. And the petitioner in this case could have taken reasonably diligent steps to discover the results of his IQ test from the earlier case. He was personally aware that he had been tested, and as petitioner admitted in his motion to amend that he filed in the district court, which is document 76, at page 16, he was aware he had been IQ tested. And so having personal knowledge that he had been IQ tested is enough information for him to simply have sent a letter to the trial court or a letter to his previous attorney inquiring about the results of those tests. And we have no indication in this record that he took any steps whatsoever. And then even if we focus on the time frame after counsel was appointed, it appears that they obtained the report in August of 2011. There is a document receipt in the file at SCR 181, and the second amended petition was not filed until November of 2012. Right, but they were exhausting their remedies in state court, so they'd get six months of statutory tolling for that, wouldn't they? That's true, Your Honor. They would receive... Yes, that's correct. Can I ask you about the merits? Certainly. Let's say that we were to agree with your position with respect to the striking of the prior, is that called the Romero? Yes, the Romero motion. The Romero motion. I think even the district court, who was somewhat sympathetic to the petitioner here, was not persuaded on that part of the claim. But what about the selection of the midterm or the high term, whatever it's called? Yes, the midterm versus the high term. Right. The district court suggested if it could, and now it can, we know that it can reach this claim, that it would have granted relief on that. And why shouldn't we credit that determination? There are two reasons, Your Honor, that that determination should not be credited. And one is that the district court collapsed the analyses between the performance prong and the prejudice prong when it very briefly addressed that after finding that it could not actually reach the merits of that at the time. And so there's no separate analysis as to the prejudice prong for even the letters. And in addition to that, the court said that it was reasonably likely that the trial court might have done something different rather than the Strickland test, which is that it's reasonably likely the trial court would have imposed a lower sentence. And so the argument is it's just a speculative, which is what the district court relied upon to say the Romero motion issue failed. It's equally speculative to say that the trial court would have gone with the middle term as opposed to the high term in this case. But it's different for the Romero motion, isn't it? Because there the presumption is that you're going to get stuck with that prior, whereas the presumption with respect to selecting the sentence within the range is that you're going to get the midterm unless there's some, you know, unless, I guess, is it kind of a weighing of the aggravating circumstances versus the mitigating? It is. In the absence of aggravating and mitigating circumstances, the midterm is the presumptive sentence. However, we do have aggravating circumstances in this case. And the prosecutor delineated six separate aggravating circumstances, all of which were weighty in terms of weighing the two. And those included the defendant's prior criminal history. He has the prior conviction for the forcible rape of a 12-year-old girl. And I do want to mention, because I believe this needs to be corrected, that the evidence in that case was not that this was some sort of a consensual sexual encounter voluntarily between two teenagers. In fact, it's the evidence was that this girl was forced into a car by her also young 18-ish-year-old aunt, and the petitioner forcibly raped her. And during that time, she was screaming out in pain and pleading for him to stop. So those are damaging facts that the prosecutor could have turned to in response to an argument by defense counsel that I want the court to consider these character letters that are favorable to petitioner, but then that could have easily prompted the prosecutor to focus more heavily on the particular facts of that prior case. And certainly that would not have been favorable in terms of the trial court's decision on the sentencing issues. And so weighing those six aggravating factors, and as the cases show, there are many other cases in California where defense attorneys do present this very same type of evidence, evidence of mental impairments, family support letters, and yet trial courts still not only deny Romero motions, but also impose upper term sentences. And there are a number of cases that we cited where the court nevertheless imposed an upper term sentence. And it's also important to recognize that the court only needed to rely on a single aggravating factor. Even if there's multiple mitigating factors in here, they were relatively weak in comparison to the aggravating factors. The court only needs one to impose the upper term sentence. And so even if the court had been presented with the evidence that petitioner proffers, and another significant consideration is that almost all of those letters were from petitioner's family members. And one thing that I noticed in preparing for today was that one of the letters, two of the letters, one is from a minister, the other is from a pastor. And the text of those letters do not disclose a relationship with petitioner, but then the next letter in the excerpt is one where the author of the letter says she's the petitioner's cousin, and underneath it she writes that she's the daughter of the minister and the pastor. So it appears that even they were related to the petitioner as well. And so this very same type of evidence, when the trial court is weighing the circumstances of this case, the prior conviction for the forcible rape of a 12-year-old girl, he was on probation for a domestic violence case at the time that he committed the crimes in this case. He continued to exhibit a violent pattern of behavior by chasing down the victim, chasing him down with a gun, threatening to kill him, and starting a car chase, in fact, during the facts of this case. And the victim himself at the sentencing hearing in this case addressed the trial court and pleaded with the court to impose the maximum possible sentence. And the court focused especially on that at the conclusion of the sentencing hearing about the effect that this had had on the victim himself, who the court said oftentimes those victims are overlooked in cases like this. What are we to make for purposes of this kind of predictive analysis that the sentencing judge did point out explicitly that there are no mitigating circumstances whatsoever? Yes, and that's perfectly understandable because the court needs to explain on the record the reasons why the court is going to impose an upper term sentence. And so it's perfectly understandable that at the outset the court would say these are the mitigating, oh, in this case there are no mitigating, and these are the aggravating factors that I'm going to rely on. So the court did remark at the outset that there were no aggravating factors. But then in explaining the reasons for going with the upper term and previously in explaining the reasons that he was denying the Romero motion, the court did not focus heavily on that at all. The focus was on the facts of this case, the effect on the victims, and the violent pattern of behavior that this petitioner has demonstrated. And so I think in light of that, and especially in light of the California cases, at the very least it was reasonable for the California Supreme Court to say trial courts even when presented with this kind of evidence will still impose upper term sentences, will still deny Romero motions, and that in and of itself makes its decision reasonable. So we would ask that the district court judgment, if there are no further questions, be affirmed. Apparently not. Thank you. Thank you. We'll give you a minute for rebuttal. Thank you, Your Honor. I want to just, in the minute that I have, address the argument about what the California cases say about what judges do, because I think it's a little bit misleading. Respondent cited three cases. There are, cited a lot of cases for the Romero issue. But with respect to the selection of terms, cited three cases, two of which involved a defendant who did not object to the imposition of the upper term. And the third, Valdez, involved a reversal and a Cunningham error where the court did not reach the reasonableness of the upper term. So those cases are hardly overwhelming support for the argument that respondent is making. And additionally, the question of whether a trial court abused its discretion in imposing an upper term, which is what these court of appeal decisions deal with, is different than the reasonable, the likeliness of a court imposing the middle term, which is what we're dealing with, which is the default that most courts do. And particularly here, when respondent said the court pointed out the lack of mitigation in explaining the departure, that's our position as well. Thank you. Thank you. All right. The case of Luis V. Vasquez is submitted.
judges: Silverman, Ikuta, Watford